# Exhibit 2

make sure I understand how I get there procedurally, if I agree with you.  I know that the government or the FDA, if I agree with you, wants to brief remedies later.  I want to understand now what the net effect would be, if I agree with you, where does that leave this drug.  If I issue an opinion tomorrow that says the plaintiffs are right, and the FDA failed in its obligation with issue to these REMS, for whatever reason, what are you asking me to do?  What's the next sentence that goes in that opinion?  What are you asking the Court to do?

MS. GOLDSTEIN:  What we're asking the Court to do at this point, Your Honor, is to issue a declaration that spells out what the FDA's obligations are in considering any modification to the REMS, and remanding the case back to FDA to reperform the 2023 review in adherence to those statutory requirements.

THE COURT:  Would the REMS stay in place under what the plaintiffs are asking me to do during that process?

MS. GOLDSTEIN:  Yes, Your Honor.  We have tried to identify any situation where this court -- where there was precedent for vacating the REMS in their entirety during a review, and we have been unable to identify any precedents.  You know, it would not be a prohibitory injunction.  It would be a mandatory injunction because there's never been a case where mifepristone was available in the United States without

some form of restriction.

THE COURT:  For whatever it's worth category, I agree, because I think that would then require the Court to make it some type of a determination on the record that I think is an agency determination with respect to the issues of approval of a drug without a REMS strategy.

MS. GOLDSTEIN:  To be clear, Your Honor, we fully expect we're going to be back here before you after any agency review.  This is particularly clear not just because of the administrative record which is before you, but also because of the political climate, withdrawing approval of mifepristone.  We're at a minimum restoring the in-person dispensing requirement.  Those were both parts of Project 2025 which has been a blueprint for the current administration.  The secretary of Health and Human Services, Robert F. Kennedy, Jr., appeared before the Senate Health Committee just last week, last Wednesday, and said that he had asked Commissioner Makary to do a complete review of mifepristone.  That wasn't so that the remaining ETASU could be removed.  So that's why we think it's particularly important, Your Honor, to issue an opinion that tells the FDA in no uncertain terms you have never complied with the 355-1(a) requirements.  Any REMS that you issue are going to have to make a determination based upon four statutory factors and only those statutory factors because those are